Filed 12/18/24  Guerra Construction v. Firouzi CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GUERRA CONSTRUCTION, INC., | D081910 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00021913-CU-BC-CTL) |
| MASOUD FIROUZI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kevin A. Enright, Judge.  Affirmed.

Frost Brown Todd and William M. Hensley; Law Offices of Michael Wright and Michael Wright, for Defendant and Appellant.

Jones Trial Attorneys and Sean M. Jones for Plaintiff and Respondent.

Defendant and appellant Masoud Firouzi appeals from a judgment following a jury verdict in favor of plaintiff and respondent Guerra Construction, Inc. (Guerra Construction) on Guerra Construction's causes of action for breach of contract, fraud and common counts stemming from Firouzi's failure to pay Guerra Construction's invoices for construction work.

The jury awarded Guerra Construction $152,349 in damages for unpaid work. In this appeal after unsuccessful motions for directed verdict, new trial and judgment notwithstanding the verdict (JNOV), Firouzi contends that because he did not personally sign the construction contract, and Guerra Construction did not prove alter ego liability, Guerra Construction's contract cause of action lacked legal merit, including the $152,349 damages claim, which he argues is unsupported by substantial evidence. Firouzi further contends Guerra Construction's fraud cause of action lacked merit because there is no substantial evidence demonstrating his fraudulent intent, causation or damages. As part of the latter argument, Firouzi contends the court erred by denying his motion for directed verdict on grounds Guerra Construction impermissibly changed its theory of fraud liability at trial, prejudicing him. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

When reviewing a judgment following a jury trial, "[w]e state the facts in the light most favorable to the jury's verdict, resolving all conflicts and indulging all reasonable inferences to support the judgment." (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1459, fn. 1; accord, *Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774, 778.)

Armando Guerra is the president of Guerra Construction, Inc. Since about 2004, he and his company have done work for Firouzi. In 2015 or 2016, Firouzi hired Guerra Construction to build a four-unit condominium project in Mission Hills (the project) on property owned by Mission Terraces, LLC. (the LLC), of which Firouzi is a member. Firouzi has another entity called Firouzi Consulting Engineers, Inc. (Firouzi Consulting). For the project, Guerra Construction entered into a form contract with the LLC in April 2015,

2

then the following month entered into an addendum with Tabriz, Inc. (Tabriz), of which Firouzi is president. The addendum provides that Tabriz "shall be substituted as the party designated as 'Owner' in the original agreement" and that the parties "acknowledge that [the LLC's] inclusion on the original agreement was done in error." (Some capitalization omitted.) The addendum further provides that "Tabriz . . . agrees to assume all legal obligations under the original agreement in place of" the LLC. (Some capitalization omitted.) However, all of the checks Guerra Construction received on the project were written by the LLC. Firouzi describes himself as "the person of" Tabriz and Firouzi Consulting.

Guerra Construction invoiced Firouzi approximately $400,000 to $500,000 over the project's one-to-two-year life, but Firouzi did not pay the full amount. The unpaid amount—reflected in invoice No. 1022 (trial exhibit No. 1)—totaled $152,349.

In about 2017, Guerra spoke about the invoices with Firouzi, who asked to meet at a Hillcrest business. He told Firouzi about the invoices, and Firouzi said he would pay them as soon as Guerra signed a release that would allow Firouzi to sell the units without debt.[1] But the moment Guerra signed the releases, Firouzi said, "I'm not going to pay," grabbed the papers, and left. Firouzi did not pay Guerra Construction anything after that day.

Guerra Construction sued Firouzi and Firouzi Consulting for breach of contract and fraud, asserting common counts based on the alleged unpaid work it performed valued at $152,349. The matter proceeded to a jury trial on Guerra Construction's claims.

---

[1] Guerra testified that the releases were "separate" from a mechanic's lien.

3

At trial, Guerra testified about the invoices reflected on trial exhibit No. 1 and the balance of $152,349 left unpaid by Firouzi, as well as Firouzi's conduct at their meeting in getting him to sign the release by promising to pay on the invoices, then reneging on that promise.[2]  On cross-examination, Guerra confirmed that he had not recorded a mechanics lien though his complaint alleged he had.  Firouzi's counsel then proceeded to question Guerra on the accuracy of the invoices reflected on trial exhibit No. 1, which showed duplicate invoice numbers in differing amounts.  When asked which of the two identically-numbered invoices was correct, Guerra responded, "They're all correct."  Guerra testified he personally gave Firouzi all of the invoices reflected on trial exhibit No. 1.  Defense counsel also pointed out some of the invoices reflected dates attributed to incorrect days of the week. Guerra responded, "I would have to fix the dates, correct the dates."

On redirect examination, Guerra confirmed that even though some invoices referenced on trial exhibit No. 1 were missing, if they were to be found and added up, subtracting the checks received from Firouzi, the amount due would total $152,349.  He testified that he always kept Firouzi's payments for different projects completely separate.  Guerra's counsel also confirmed with Guerra that trial exhibit No. 1's reference to "$79,000 received" from Firouzi was for the invoices listed on that document.

Following Guerra's testimony, Firouzi moved for a directed verdict.  His counsel argued trial exhibit No. 1 lacked backup documentation, and was "inherently unreliable" since Guerra testified he would have to look at the

_____

[2]     A Spanish-English interpreter assisted Guerra at trial.  Guerra was asked about trial exhibit No. 1, which he said was the last invoice he sent Firouzi on the project.  Counsel asked, "I see towards the bottom of plaintiff's [trial exhibit No. ] 1, it says due balance total $152,349.  Has that amount been paid?"  Guerra responded, "Exactly, that's the amount that wasn't paid."

4

missing documents to see if they were accurate. Counsel also argued that while the complaint alleged Guerra Construction had filed a mechanics lien, and Guerra testified Firouzi promised to pay Guerra if Guerra released the mechanic's lien, that "didn't happen." Firouzi's counsel argued Guerra Construction's fraud claim was specifically based on the theory that Guerra was tricked into releasing a mechanic's lien, but there was no evidence to support that theory. Counsel argued Guerra could have, but failed to produce the invoices on trial exhibit No. 1 to support his claim.

Guerra Construction's counsel responded that while Guerra testified he would have to see the invoices to elaborate on their details, he "made no mention of the fact they could be unreliable or made in a mistake or error." Counsel argued the exhibit had indicia of reliability based on one underlying invoice (trial exhibit No. 14), which corresponded in amount and date to trial exhibit No. 1. He argued Guerra "further testified that he maintains these invoices, sends them out and—as he goes, and that the due balance total of $152,349 is supported by that information that he gathered on the way and conveyed to the defendant. So although some of those supporting invoices aren't available, his recollection that they're accurate and that the information was properly adapted into [trial exhibit No.] 1 is sufficient to defeat [the] defense motion." With regard to the mechanic's lien, Guerra Construction's counsel argued Guerra did not know exactly what the lien was, but he was referring to something analogous to a mechanic's lien, which was the subject of the release he signed to get paid. Counsel stated, "While the terminology is erroneous, the nature, purpose and related actions of the parties and those liens is consistent." The trial court denied the motion with respect to Guerra Construction's breach of contract claim based on trial exhibit No. 1, and reserved decision on Guerra Construction's fraud claim.

5

Firouzi's counsel called Guerra back on the stand for Firouzi's defense case. As rebuttal evidence, he presented the contract Guerra Construction signed with the LLC and asked Guerra if he understood he had contracted not with Firouzi personally, but with Firouzi as the LLC's representative. Guerra confirmed that all of the checks he received were written by the LLC, not on Firouzi's personal account. In response to counsel stating that the lawsuit was filed against Firouzi Consulting, which was not a party to the contract, Guerra testified, "Well, everything—personally, everything was directly with . . . Firouzi," but Guerra acknowledged Firouzi was the representative of those entities. Defense counsel also presented Guerra with the May 2015 addendum to the contract changing the owner from the LLC to Tabriz. Guerra testified that while Firouzi was not named as an individual owner, "all of the deals were made directly with [him]."

On cross-examination, Guerra confirmed that the May 2015 contract addendum provided that the LLC was included on the original contract in error, and that Tabriz agreed to assume all of the original contract's legal obligations. He testified that the entire time Guerra Construction worked on the project his interaction was directly with Firouzi and not any LLC; likewise all invoices were sent to Firouzi and Firouzi made all of the decisions, including about payment.

Following this testimony, the trial court revisited Firouzi's directed verdict on the fraud claim. Guerra Construction's counsel argued Firouzi falsely promised to repay Guerra, who detrimentally relied on the statements and did not get paid, even after Firouzi sold the units. Firouzi's counsel argued this was a "new theory" contrary to the description of the case given to the jury at the outset of trial. Counsel argued that if there was no mechanic's lien, the false promise claim did not "make any sense" as there

6

was "nothing to prevent . . . Firouzi, acting as agent for the actual owner of the property, to sell it"; that absent a mechanic's lien, Firouzi "wouldn't make a promise to get the release" as "[h]e wouldn't need to." The court responded: "Well, what I'm understanding—and it's not entirely clear, I agree. But what I'm understanding is that Mr. Firouzi had Mr. Guerra sign something—we don't know what it is—related to debt-free assurance for the buyer of the unit. And he, Guerra, was told by Firouzi, "Sign these." Guerra said, I want to be paid. So Guerra signed them and Firouzi didn't pay him and said he wasn't going to pay him. [¶] That's, I think, the summary of the state of the evidence. And there's other nuances, but I think that's the essence of the fraud. So I get the mechanic's lien argument, but it's changed. I think he's saying forget the mechanic's lien. This is what happened. That's the fraud. . . . [¶] In other words, that's the state of the evidence before the jury. You're asking me to knock him out before the jury, you can't go to the jury on fraud." Guerra Construction's counsel argued the absence of a mechanic's lien was "irrelevant" as "Guerra relied on the statements. He testified he relied on [Firouzi's] assurances . . . and believed him, believed that he was signing away his rights to secure that debt. So whether . . . or not . . . Guerra did, in fact, sign away his rights to secure that debt or not, that was his understanding of his communications with . . . Firouzi, and it was that detrimental reliance on those promises that led him to remain unpaid to the tune of $152,000." The court denied Firouzi's motion for directed verdict on the fraud claim.

Before the parties made their closing arguments, the court dismissed Firouzi Consulting from the case at Guerra's request and modified the general verdict form to reflect only Firouzi individually. Counsel for both parties agreed to the general verdict form.

7

In closing arguments, Guerra Construction's counsel emphasized that the issue of Firouzi's remaining payment obligation came down to credibility: "If you determine that Mr. Guerra is telling the truth, that his invoices were accurate, and that at the end of the day he was underpaid by $152,000, approximately, this is your opportunity to make that right, to force Mr. Firouzi to finally pay the rest of his bill to compensate Mr. Guerra and his team for all of their hard work. And you'll see in these contracts they're making about $18 an hour. $152,000 is a lot of money. 8,463 hours, day-in and day-out labor, over the course of years, something I think is difficult to overlook. And I'm asking you, as the jury, to respect that hard work by Mr. Guerra and his team and make things right by asking—by telling Mr. Firouzi to pay his fair share."

Defense counsel began his argument by telling the jury that Guerra Construction "did not sue the proper party." Briefly explaining the principles relevant to disregarding corporate entities by "piercing the corporate veil," he argued Guerra Construction was required to, but did not allege in its complaint that Firouzi failed to treat the LLC and Tabriz as separate entities or that Guerra Construction was seeking to pierce the corporate veil. Counsel argued Guerra Construction knew at all times it was dealing with the LLC or Tabriz, but did not make claims against them. He emphasized that Firouzi had testified and the exhibits showed the LLC overpaid Guerra Construction by a couple thousand dollars, and asserted that Guerra Construction's trial exhibit No. 1 had "no backup whatsoever."

In rebuttal, Guerra Construction's counsel pointed out that Firouzi had swapped Tabriz as the contracting party, but it "played no role at all in any of this" and did not write the checks to Guerra Construction. Counsel argued it was "apparent through the documentation [that Firouzi] is trying to hide

8

between various different corporations and LLCs to avoid paying his fair share and honoring the agreement that he made to his workers."

During their deliberations, the jury sent a note (one of several) asking: "Is the fact that they paid for the project outside of the LLC adequate to pierce the corporate veil? (payor = Mission Terrance [*sic*], Contract with Ta-Breeze [*sic*])" After conferring with counsel, the court responded: "[A]ny issue regarding piercing the corporate veil is not before you to decide." Thereafter, the jury returned the general verdict in Guerra Construction's favor on all of its causes of action and awarded it $152,349 in damages.

Firouzi filed a notice of appeal from the judgment. Thereafter, he moved for JNOV and a new trial on grounds the evidence was insufficient to support the verdict against him, pointing out that Guerra had failed to name either the LLC or Tabriz as defendants, its complaint made no alter ego allegations, and Guerra did not offer evidence that the entities were insolvent or created by Firouzi to avoid personal liability. Firouzi further argued in support of his new trial motion that by repudiating the mechanic's lien claim during trial, Guerra Construction changed its theory of fraud, leaving its complaint "devoid of the required specificity of misrepresentation pleading requirements" and causing Firouzi to guess about the facts, making him unprepared to assert a defense and preventing him from having a fair trial. Firouzi submitted the sworn declaration of his counsel, who averred that had he known Guerra Construction was dropping its mechanic's lien theory, he would have asserted a statute of frauds defense and presented additional canceled checks of the LLC showing Guerra Construction was overpaid for its work. The trial court denied both motions based on procedural defects, but ruled that Firouzi in any event failed to show any grounds for a new trial. It found that there was "sufficient evidence in the record for the jury to have

9

found . . . Firouzi's individual liability" and there was "evidence . . . Firouzi asked . . . Guerra to sign a release, Guerra was routinely asked to sign releases after work was completed and before the apartments were sold, and Guerra signed the release based on . . . Firouzi's promise Guerra would be paid."[3]

## DISCUSSION

### I. *Standard of Review*

We begin with the relevant standard of review. Citing *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456 and *Phipps v. Copeland Corporation LLC* (2021) 64 Cal.App.5th 319, Firouzi maintains that this court must decide whether his " 'evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing*, at p. 466; see *Phipps*, at p. 333.)

---

[3] Firouzi filed his notice of appeal on March 10, 2023. The caption of his brief states he is also appealing the court's postjudgment orders denying JNOV and a new trial. An order denying a new trial is not separately appealable, but can be appealed from the underlying judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18; Code Civ. Proc., § 906.) An order denying JNOV is separately appealable. (Code Civ. Proc., § 904.1, subd. (a)(4).) Firouzi's notice of appeal, which was filed before he moved for JNOV, does not mention that order. "A notice of appeal from a judgment alone does not encompass other judgments and separately appealable orders." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239.) Although a "notice of appeal must be liberally construed" (Cal. Rules of Court, rule 8.100(a)(2)), even a liberal construction would not encompass the order on Firouzi's JNOV motion, as a notice of appeal cannot be read to encompass a ruling that has not yet occurred. Firouzi makes no arguments about those postjudgment orders in any event.

The contention is curious, as this standard applies when the issue on appeal turns on a "failure of proof at trial" (*People v. Field* (2024) 106 Cal.App.5th 132, 136; *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.*, *supra*, 196 Cal.App.4th at p. 466), that is, where " 'the trier of fact has expressly or implicitly concluded that *the party with the burden of proof* did not carry the burden and *that party* appeals . . . .' " (*Field*, at p. 158, italics added; citing *Sonic Manufacturing*, at p. 466; see also *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 ["On appeal from a determination of failure of proof at trial, the question for the reviewing court is 'whether the evidence compels a finding in favor of the appellant as a matter of law' "].) In *Sonic Manufacturing*, the party with the burden of proof was the unsuccessful plaintiff who had alleged the defendant breached a contract. (*Sonic Manufacturing*, at p. 466.) In *Phipps*, the party who failed to meet its burden was the defendant, on the issue of the percentage of legal cause attributable to the plaintiff or other parties. (*Phipps v. Copeland Corporation LLC*, *supra*, 64 Cal.App.5th at p. 332.)

Here, as the jury instructions made clear,[4] Guerra Construction was the party with the burden of proof on its causes of action. By its general verdict, the jury determined it *met* its burden. The foregoing authorities are inapposite.

Rather, because the parties presented disputed evidence to the jury, which also assessed witness credibility, we apply the substantial evidence standard of review. (See *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 43.) Under this standard, " 'the power of an appellate court begins and ends with the determination as to whether there is any

---

4    The court instructed that "Guerra [Construction] must prove" its claims, damages, and the amount of damages stemming from those claims.

11

substantial evidence, contradicted or uncontradicted, which will support the finding of fact.' " [Citation.] We are required to accept all evidence that supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the judgment. [Citation.] 'While substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' [Citation.] Thus, it is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it. [Citations.] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' " (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213-214.)

## II. *Effect of the General Verdict*

The jury's general verdict shows that the jury found "in favor of Guerra Construction . . . and against . . . Firouzi, *individually*" (italics added) on each of Guerra Construction's claims, identified as "breach of contract," "common counts/unjust enrichment," "intentional misrepresentation" and "fraud/negligent misrepresentation." (Capitalization omitted.)

The general verdict findings have consequences on appeal: A general verdict " ' "imports findings in favor of the prevailing party on all material issues; and if the evidence supports implied findings on any set of issues which will sustain the verdict, it will be assumed that the jury so found. The court on appeal does not have to speculate on what particular ground the jury may have found in favor of the prevailing party." ' " (*Morin v. ABA Recovery Service, Inc.* (1987) 195 Cal.App.3d 200, 210, disapproved on another ground in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664; see also

12

*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1193.)  Thus,
"[w]here there are *several counts* or causes of action, a general verdict will
stand if the evidence supports it on any one sufficient count.  The general
verdict 'imports' or 'implies' a finding in favor of the prevailing party on the
count which is supported by evidence." (*Morin*, at p. 210, quoting 7 Witkin,
Cal. Procedure (3d ed. 1985) Trial, § 331, pp. 332-333.)

In this appeal, Firouzi does not discuss or challenge the jury's verdicts
against him individually on Guerra Construction's common count and unjust
enrichment claims/theories.  He does not explain whether his challenge based
on the alter ego doctrine in any way impacts or applies to them.  We must
presume the findings are supported by substantial evidence favoring Guerra
Construction on those theories.  Doing so eliminates the need to address
Firouzi's challenges to the viability of the verdicts on breach of contract and
negligent or intentional misrepresentation, as the jury's damages verdict
against Firouzi individually is supported by its findings on the common count
and unjust enrichment claims/theories.  We address Firouzi's challenges
anyway, and reject them.

### III. *Guerra Construction's Breach of Contract Claim*

Firouzi challenges the verdict on Guerra Construction's breach of
contract cause of action on two grounds.  He first contends Guerra
Construction did not plead or prove that the alter ego doctrine should apply
so as to make him individually responsible for his corporation's debts.  He
next contends Guerra Construction's evidence and admissions show that the
$152,349 damages verdict is not supported by substantial evidence.

13

A.  *Alter Ego*

   1.  *The Law*

   " ' "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests . . . .  In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation:  'As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.  When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation.' " ' "  (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1451, quoting *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 510-511; see also *JPV I L.P. v. Koetting* (2023) 88 Cal.App.5th 172, 189.)  The doctrine extends to LLCs.  (*JPV*, at p. 189.)  "The essence of the alter ego doctrine is that justice be done.  'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.'  [Citation.]  Thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require."  (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301; see also *JPV*, at p. 189 [doctrine is an " ' "extreme remedy, sparingly used" ' "]; *Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155 [same].)

   " '[T]he conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court.  [Citations.]  This is

14

because the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact.' [Citation.] There are two requirements for disregarding the corporate entity: first, that there is a sufficient unity of interest and ownership between the corporation and the individual or organization controlling it that the separate personalities of the individual and the corporation no longer exist and, second, that treating the acts as those of the corporation alone will sanction a fraud, promote injustice, or cause an inequitable result. [Citation.] 'Both of these requirements must be found to exist before the corporate existence will be disregarded, and since this determination is primarily one for the trial court and is not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence.' " (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071-1072; see also *Mesler v. Bragg Management Co.*, *supra*, 39 Cal.3d at p. 300.)[5] "It is the plaintiff's burden to overcome the presumption of the

---

[5]     Courts have identified many relevant factors to invoke the doctrine, including whether (1) there has been a commingling of funds and other assets; (2) an individual shareholder has treated corporate assets as his own; (3) the corporation has failed to obtain authority to issue, or to subscribe to issue, stock; (4) an individual shareholder has represented that he is personally liable for corporate debts; (5) multiple corporations have common ownership or common leadership; (6) the individual uses the same business location, employees, or attorney; (7) the corporation was insufficiently capitalized; (8) the corporation was used as " ' " 'a mere shell' " ' "; (9) the identity of the true owners or financial interest of the corporation has been concealed; (10) the corporation disregarded " ' " 'legal formalities' " ' " or failed to maintain " ' " 'arm's length relationships among related entities' " ' "; (11) the corporate entity was used to procure labor, service or merchandise for another person or entity; (12) assets of the corporation were diverted " ' " 'to the detriment of creditors' " ' "; (13) the corporation was used " ' " 'as a shield against personal liability' " ' "; and (14) the corporation was used to transfer liability. (*Greenspan v. LADT, LLC*, *supra*, 191 Cal.App.4th at pp. 512-513; *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417-418; *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838-840.)

15

separate existence of the corporate entity." (*Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1212.)

Importantly, "[t]here is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. " (*Mesler v. Bragg Management Co.*, *supra*, 39 Cal.3d at p. 300; see also *Greenspan v. LADT, LLC*, *supra*, 191 Cal.App.4th at p. 511; *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248 ["application of the alter ego [doctrine] 'is not made to depend upon prior decisions involving factual situations which appear to be similar. . . . "It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case" ' "].)

2. *Pleading and Proof of Alter Ego*

Apart from discussing general principles of alter ego liability and citing *Dow Jones Co. v. Avenel* (1984) 151 Cal.App.3d 144 for the proposition that alter ego is an equitable issue, Firouzi's opening brief arguments concerning Guerra Construction's pleading and proof of alter ego are barren of authority. Firouzi does not meaningfully discuss the pleading and proof requirements for asserting an alter ego theory.[6] He maintains the theory was "irrelevant" because "no alter ego allegations were contained in the complaint except that [he] and Firouzi Consulting . . . were the alter egos of each other . . . , no jury instructions were given on alter ego . . . , and no trial testimony was given on this subject by Guerra Construction because its principal admitted that he understood (1) [the LLC] and Tabriz . . . were the contracting parties, and (2) [Firouzi] was always acting in a representative capacity for [the LLC] in

_____

[6] In his reply brief, Firouzi points to the trial court's response to the jury question that the alter ego theory was not before it to decide. But the court's answer is consistent with the doctrine being an equitable issue within its purview.

16

paying checks for the construction project." Pointing to his counsel's closing arguments, Firouzi argues he was "not shown to be personally liable on the contract or tort claims . . . ." We are not persuaded.

Firouzi acknowledges that Guerra Construction did in fact include alter ego allegations in its complaint. In fact, Guerra Construction generally alleged "that at all times mentioned in this complaint, defendants, and each of them, were the agents . . . and/or alter egos of each of the other co-defendants, and in doing the things alleged in this complaint were acting within the scope of their authority as such agent . . . and/or alter ego, and with the permission and consent of their co-defendants." (Capitalization omitted.) In addition to Guerra Construction pleading the theory, Guerra Construction presented evidence that Firouzi himself hired Guerra Construction and Guerra dealt directly with Firouzi regarding the project, personally directing invoices to him.[7] The evidence was that after initially contracting with the LLC, Firouzi substituted another corporate entity, Tabriz, as the party assuming "all legal obligations under the original agreement" and yet the LLC continued to pay all of Guerra Construction's invoices.

Firouzi's counsel made it a point in Firouzi's defense case to get Guerra to admit Guerra Construction had contracted with the LLC, not Firouzi individually. He also questioned Firouzi about Tabriz paying taxes and filing tax returns separately from Firouzi individually. But Firouzi himself presented evidence showing he was the sole person behind Tabriz and the LLC. In Firouzi's cross-examination, Guerra Construction's counsel focused

---

[7] That Guerra acknowledged that Firouzi was a representative of the LLC or that Firouzi denied he was swapping Tabriz for the LLC is of no moment, as we disregard contrary evidence in our review for substantial evidence.

on the contract addendum provisions stating that the LLC had been included in the original contract in error, that Tabriz had been designated the owner, and questioned Firouzi about the fact he "kind of jump[s] around between which company you use and where." Firouzi also admitted all the payments came from the LLC, not Tabriz, which was then the contracting party. Firouzi specifically raised the doctrine in his closing arguments to the jury.

On this record, Firouzi, who was sued individually, was on notice and could not have been mislead about the fact Guerra Construction might assert an alter ego theory at trial. (Accord, *Gordon v. Aztec Brewing Co.* (1949) 33 Cal.2d 514, 516 [where alter ego theory was not pleaded but evidence was presented and the jury instructed on it, the defendant was not "misled to its prejudice by any variance between pleadings and proof"]; *Marr v. Postal Union Life Ins. Co.* (1940) 40 Cal.App.2d 673, 681 [defendant's answer put alter ego doctrine at issue, and alter ego evidence was presented to the jury, thus the defendant was not mislead to its prejudice as "the variance, if any, between the allegations of the complaint and the proof cannot be considered as a material variance"].) And the theory was adequately put in issue for trial.

While Firouzi complains that the jury was not instructed on the doctrine, as stated above (and as he recognizes), the decision to apply the doctrine, an equitable one, is for the trial court. (*Stark v. Coker* (1942) 20 Cal.2d 839, 846; *Dow Jones Co. v. Avenel, supra,* 151 Cal.App.3d at pp. 147-148 ["the 'constitutional guaranty of the right to a jury trial does not apply to actions involving the application of equitable doctrines' " such as the alter ego doctrine].)

In response to Firouzi's alter ego arguments in his new trial motion, the court ruled there was sufficient evidence for the jury to impose individual

18

liability on him.  The record supports this finding.  As stated, various factors may be considered in the alter ego test, including identical equitable ownership, use of a corporation to procure services or serve as an "instrumentality" or a "conduit" for the business of another individual, and failure to maintain an arm's-length relationship.  (*Greenspan v. LADT, LLC*, *supra*, 191 Cal.App.4th at pp. 512-513; *Associated Vendors, Inc. v. Oakland Meat Co., supra*, 210 Cal.App.2d at pp. 838-840.)  No single factor is determinative.  (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 849.)  We conclude the evidence was sufficient to infer a unity of ownership and interest between Firouzi and his corporations.  There is no evidence any individual made decisions concerning the project other than Firouzi, who also personally presented Guerra with the releases to sign when Guerra confronted him about the unpaid invoices.  It was Firouzi who promised to pay Guerra if he signed the releases.  The court could infer Firouzi and his entities did not maintain an arm's-length relationship given the ease with which Firouzi substituted Tabriz for the LLC as the legally obligated party to the operative contract, but nevertheless paid Guerra Construction through the LLC's account.

Firouzi does not discuss the second prong of the doctrine.  The second factor in determining alter ego status is that " 'there must be an inequitable result if the acts in question are treated as those of the corporation alone.' " (*Hasso v. Hapke, supra*, 227 Cal.App.4th at p. 155.)  Though "[d]ifficulty in enforcing a judgment does not alone satisfy this element" (*Leek v. Cooper, supra*, 194 Cal.App.4th at p. 418), conduct amounting to bad faith is sufficient.  (*Ibid*.; but see *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 816 [the law does not require proof of wrongful intent to show alter ego liability, only that the acts of the party

19

against whom alter ego is asserted "caused an ' " 'inequitable result' " ' "].)
We conclude that the record—showing Firouzi induced Guerra to sign a
release with a promise he would pay Guerra Construction if Guerra did so,
then reneged on that promise and immediately walked out leaving Guerra
unpaid—supports the court's implied finding of bad faith conduct "that
makes it inequitable for [Firouzi] to hide behind the corporate form" (*Leek v.
Cooper, supra*, 194 Cal.App.4th at p. 418) or alternatively that Firouzi's acts
would cause an inequitable result (*Relentless Air Racing*, at p. 816), namely
leaving Guerra Construction unpaid for work it performed.

B.  *Jury's Damages Verdict*

We reject Firouzi's contentions concerning the jury's damages verdict.
In making them, Firouzi relies on the erroneous standard of review discussed
above for a party who has failed to meet its burden of proof, and the premise
that Guerra Construction at trial admitted there was "undisputed contrary
evidence . . . show[ing] it is not entitled to a verdict."  Firouzi argues the
check payment evidence shows the LLC made payments exceeding the
amounts shown in Guerra Construction's trial exhibits that Guerra did not
credit toward the project.  According to Firouzi, Guerra Construction's trial
exhibits are "inherently unreliable", "suspect," or "improbable" because the
invoices underlying trial exhibit No. 1 either were not presented at trial, the
invoices that were presented did not provide "descriptions or other
clarification as to the work done for which [Guerra Construction] was seeking
payment," or, as to one invoice (trial exhibit No. 14), its number "seems to

indicate that [trial exhibit Nos. 1 and 2] were created 'after the fact.' "[8]  He argues the "accounting 'bottom line' " is that Guerra Construction did not properly give credit for an additional $92,527.47 in payments it had received, and thus as a result, there was no substantial evidence for the jury to award Guerra Construction $152,349.

These arguments fail to the extent they are based on the erroneous review standard discussed above.  We also reject the premise on which they are based.  The assertion that Guerra somehow admitted at trial that Guerra Construction was paid in full for its work is repeated throughout Firouzi's brief, mostly without record citations.  We have reviewed the portions of the record Firouzi does cite, and do not find such admissions.  In them, counsel seeks to have Guerra admit that Firouzi should have been credited more than what Guerra claimed, which reduced the assertedly outstanding balance.  Guerra did not admit that to be the case.  Rather, as stated, Guerra testified Guerra Construction was not paid in full for its work, and that the remaining balance was $152,349.  To the extent there was any conflict in the evidence, we must credit Guerra's testimony supporting the verdict.

Firouzi's challenge at bottom turns on the reliability or weight of the evidence, which is outside this court's purview when reviewing for substantial evidence.  (*Harley-Davidson, Inc. v. Franchise Tax Bd.*, *supra*, 237 Cal.App.4th at p. 213.)  The jury plainly believed Guerra's testimony that the outstanding amount owed to Guerra Construction was $152,349, as it awarded Guerra Construction the exact amount in damages.  The testimony

---

[8]     In a footnote, Firouzi also points out the days of the week listed on trial exhibit No. 14 are inaccurate for 2016.  This again is a matter of weight or credibility of the evidence, which this court may not reassess on substantial evidence review.  (*Harley-Davidson, Inc. v. Franchise Tax Bd.*, *supra*, 237 Cal.App.4th at p. 213.)

of a single witness constitutes substantial evidence, even if contradicted by other evidence. (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 231; *DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 382.) Thus, we accept Guerra's testimony, which is not inherently improbable. (*DeNike*, at p. 381 [single witnesses testimony may constitute substantial evidence as long as it is not physically impossible or inherently improbable].) It is not for us to reexamine Guerra's accounting on the invoices and do the math on them. As a result, we do not disturb the jury's damages award.

### IV. *Guerra Construction's Fraud Causes of Action*

Firouzi reiterates his alter ego challenge to the verdicts in Guerra Construction's favor on its causes of action for fraud.[9] That challenge fails for the reasons discussed above. Firouzi further maintains there is no evidence of scienter, causation or "proper compensatory damages." (Capitalization, bolding and underlining omitted.) According to Firouzi, the LLC paid a portion of the total debt identified in trial exhibit No. 1, demonstrating "*performance* along the way, which legally negates" his fraudulent intent. He also argues "there could be no scienter on Guerra Construction's abandoned 'mechanic's lien release' theory because there was no mechanic's lien and no release agreement ever produced during trial."

In making these contentions, Firouzi acknowledges that the court in *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18 held that fraudulent intent may be inferred from a defendant's "hasty repudiation of [a] promise . . . ." (*Id*. at p. 30.) As stated, the evidence here was that Firouzi called Guerra to a meeting at an establishment, promised to pay Guerra Construction's invoices if Guerra signed a release, then once Guerra did so, immediately

---

9    Firouzi does not distinguish between fraud based on intentional or negligent misrepresentations.

closed his briefcase and left the establishment without paying. This is not mere "nonperformance" (*ibid*.); we cannot think of a more "hasty repudiation" than Firouzi's actions in that respect. On this record, the jury could reasonably infer Firouzi never intended to perform his promise to pay the remaining balance owed to Guerra Construction.

Firouzi's claim about the absence of evidence of causation and damages turns on his assertion—contradicted by substantial evidence from Guerra's own testimony—that trial exhibit No. 1 never allowed for "undisputed credits that [Guerra] himself conceded should be credited." (Italics omitted.) It also turns on an argument that Guerra abandoned his theory that Firouzi induced him into releasing a mechanic's lien (which Guerra admitted at trial he did not file), which Firouzi characterizes as "key underlying premise" of Guerra's fraud case. Firouzi argues: "To proffer a case in front of a jury, with undisputed proof of allowing inflated damages to go forward, defies logic and is not consistent with the evidence—aside from Guerra Construction's proof being suspicious in nature, [Guerra Construction's] proof did not square with Guerra Construction's own testimony [*sic*] on receiving undisputed payments which *should* have been credited by [Guerra's] *own admissions*." The mechanics lien contention we address below; the latter contention is based on the unsupported premise we have rejected above.

### V. *Ruling on Directed Verdict*

Firouzi contends the trial court's ruling on his request for a directed verdict was "legally erroneous." (Bolding and underlining omitted.) He first argues the $152,349 in damages is "unsupportable from a legal standpoint." He next argues the court prejudicially erred by permitting Guerra Construction to change its theory of fraud, essentially allowing it to amend according to proof to assert a new theory in disregard of the pleadings and

23

statements of the case given to jurors. He compares the circumstances to *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, in which the appellate court held the lower court abused its discretion in permitting an amendment according to proof. (*Id*. at pp. 912-913.)

A motion for a directed verdict "is in the nature of a demurrer to the evidence." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629-630.) Thus, in determining such a motion, a trial court may not weigh the evidence or judge the credibility of witnesses. (*Ibid*.) All conflicts must be resolved and inferences drawn in Guerra Construction's favor. Applying this standard, we readily uphold the court's decision to deny Firouzi's motion, as Guerra's testimony as recounted above supports the verdict both as to the claims based on unpaid work and fraud.

As for Firouzi's challenge to the court's implied ruling permitting Guerra Construction to amend its pleading according to proof, we likewise hold the court did not err. It is settled that such leave to amend was entrusted to the court's sound discretion, and the exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse. (*North Coast Village Condominium Association v. Phillips* (2023) 94 Cal.App.5th 866, 881.) "*More importantly, the discretion to be exercised is that of the* trial court, not that of *the reviewing court*. Thus, even if the reviewing court might not have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record." (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

The court in *Garcia v. Roberts* explained: "Code of Civil Procedure section 473 gives trial courts discretion to allow a party to amend his or her pleadings 'in furtherance of justice,' while [Code of Civil Procedure section] 576 states that such leave to amend may be granted even after the

commencement of trial. [Code of Civil Procedure section] 469 specifically governs motions to amend at trial to conform to proof, which was the basis for the trial court's order in the present case. [Code of Civil Procedure section] 469 provides in relevant part as follows: 'No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.' Such amendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.' " (*Garcia v. Roberts*, *supra*, 173 Cal.App.4th at p. 909, fn. omitted.)

Thus, this court has held that "even if the proposed legal theory is a novel one, 'the preferable practice would be to permit the amendment and allow the parties to test its legal sufficiency by . . . motion for judgment on the pleadings or other appropriate proceedings.' " (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048.) "[I]t is irrelevant that new legal theories are introduced as long as the proposed amendments 'relate to the same general set of facts.' " (*Ibid.*)

We conclude the general facts here are not materially different. Guerra Construction's complaint alleged that Firouzi failed to pay Guerra Construction, which filed a mechanic's lien, Firouzi "told Guerra [Construction] to release the lien, and it would be paid once the [condominium] units sold," and Guerra released the lien. At trial, Guerra admitted he did not file a mechanics lien, but testified that Firouzi presented him with an unspecified release or releases, telling him if he signed them, Firouzi would pay the balance due to Guerra Construction, but did not. This is the same general set of facts, not a "drastic" shift in course as Firouzi maintains. Guerra Construction performed work benefitting Firouzi, who did

not fully compensate it for its labor, and Firouzi owed Guerra Construction money, falsely promising to pay it if Guerra signed a release.

The circumstances are unlike those in *Garcia v. Roberts*, *supra*, 173 Cal.App.4th 900, involving an amendment permitting a plaintiff to claim breach of a written contract when he had denied any such contract's existence, claiming "the 'only' agreement between the parties . . . was [an] oral loan agreement." (*Id*. at p. 912.) The plaintiff died before trial. (*Id*. at p. 907.) Under these circumstances, the Court of Appeal held the trial court abused its discretion in permitting the amendment, as it unfairly prejudiced the defendants who had severely limited the focus of their discovery efforts in accord with the pleading and deposition testimony. (*Garcia v. Roberts, supra,* 173 Cal.App.4th at pp. 912-913.) "In view of these circumstances *and the crucial fact that at the time of trial plaintiff was deceased and so could not be questioned further on any issues relevant to the lease-option agreement,* we conclude that defendants were unfairly prejudiced . . . ." (*Id*. at p. 913, italics added.) The defendants' inability to question the plaintiff on the matter was "crucial" (*ibid*) to the appellate court's reversal of the decision to permit amendment.

We cannot say Firouzi has demonstrated the amendment to conform to proof here actually misled him to his prejudice. He does not say whether he lacked sufficient opportunity to conduct pretrial discovery or the ability to depose Guerra concerning his claim. Firouzi had the opportunity and did fully question Guerra at trial about the change in theory.[10] As stated, it is

---

10    Firouzi has asked that we consider new authority, *Batta v. Hunt* (2024) 106 Cal.App.5th 295. But in *Batta*, unlike here, the appellant argued she would have retained experts and outlined the discovery she would have conducted had she known of a new easement-by-implication theory. (*Id*. at p. 310.)

immaterial what we would have decided if we were the trial court presented with the issue of whether to amend the complaint in this case. (*Branick v. Downey Savings & Loan Assn., supra,* 39 Cal.4th at p. 242.) We conclude that any variance between the allegation in the pleading and the proof was not material. The trial court did not abuse its discretion in impliedly permitting the amendment to conform to proof.

## DISPOSITION

The judgment is affirmed. Guerra Construction shall recover its costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.